UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYROSH BROWN,

              Plaintiff,

vs.

CITY OF GRAND RAPIDS,
JOSEPH DAILEY, and
KENT BERACY,

              Defendants.

Case No. 1:13-cv-964

Hon. Robert J. Jonker

_____

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a *pro se* plaintiff pursuant to 42 U.S.C. § 1983. This matter is now before the Court on defendants' motion for summary judgment (docket no. 59). The motion is unopposed.

**I.      Background**

*Pro se* plaintiff set forth the following allegations in his amended complaint. On December 30, 2011, defendant Officers Joseph Dailey and Kent Beracy pulled over plaintiff's vehicle. Amend. Compl. (docket no. 39, PageID.186). Plaintiff was complying with Officer Dailey's request to provide his license, registration and proof of insurance when Dailey demanded that he step out of the car. *Id.* Plaintiff asked Dailey multiple times why he needed to exit the vehicle and then Officer Beracy went to the driver's side door, grabbed plaintiff, and forcefully pulled him out of the vehicle. *Id.* Plaintiff stated that Dailey also pulled him from the vehicle, shouting "Do it now Motherfucker" "without assessing the situation to see Plaintiff did not have a

weapon or threaten either officer." *Id.*  After removing plaintiff from the vehicle, Dailey used excessive force to twist plaintiff's arm behind his back.  *Id.*

Officer Beracy restrained plaintiff while Officer Dailey assaulted plaintiff "using his position of power over Plaintiff."  *Id.* at PageID.187.  According to plaintiff, Dailey became belligerent and aggressive toward plaintiff and used his position of power to sexually assault plaintiff:

> Dailey not only did a routine pat-down, but sexually assaulted Plaintiff by using his hands to hit Plaintiff in his genitals, squeeze and fondle Plaintiff's genitals, "chopped" his hands up into the Plaintiff's buttocks, and committed 2nd degree rape against the Plaintiff.

*Id.*  Neither Officer Beracy nor Dailey gave plaintiff his *Miranda* rights prior to cuffing him and placing him in the police car.  *Id.*  Plaintiff did not have a weapon or threaten the officers.  *Id.* Plaintiff alleged that he questioned both officers several times why they forcefully removed him from the car, used excessive force, and arrested him.  *Id.*  Plaintiff alleged that there was no legal justification for the police brutality.  *Id.*

Plaintiff's amended complaint did not allege separate counts against defendants.[1] Rather, it lists 10 paragraphs of allegations (¶¶ 24-33) under the heading: "**CAUSES OF ACTION Constitutional and Civil Rights Pursuant to 42 U.S.C. § 1983 Deprivation of Rights by the Constitution and Federal Right under to [sic] color of law.**"  *Id.* at PageID.188-192.  It is well established that *pro se* complaints are held to even "less stringent standards than formal pleadings drafted by lawyers," *Kent v. Johnson*, 821 F.2d 1220, 1223 (6th Cir. 1987) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)), and should be construed liberally, *see Alexander v. Northern*

---

[1] *See* Fed. R. Civ. P. 10(b) ("If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count.").

*Bureau of Prisons*, 419 Fed. Appx. 544, 545 (6th Cir. 2011).  While the Court has a duty to read

plaintiff's *pro se* amended complaint indulgently, this liberal construction does not require the Court

to conjure up unpled allegations.  *See McDonald v. Hall*, 610 F.2d 16, 19  (lst Cir. l979).

The Court construes plaintiff's complaint as alleging three counts.  First, plaintiff

alleged that defendant officers violated his Fourth Amendment rights by using excessive force and

sexually assaulting him.  *Id.* at PageID.188-190.  Second, plaintiff included statements to the effect

that defendants violated his constitutional rights under the Fifth and Sixth Amendments when they

failed to read him his *Miranda* rights.  *Id.* at PageID.188-189, 191.  Third, plaintiff alleged that

defendant City of Grand Rapids ("City") is liable because it had a policy which was the moving force

behind the officers' violations.  *Id.*at PageID.190-92.  Plaintiff alleged that this policy was that all

officers uphold the constitution and that defendant officers were inadequately trained.  *Id.*

Defendants suggest that plaintiff is asserting a race-based equal protection claim.

This is based on one sentence in the final paragraph of plaintiff's amended complaint which referred

to race, i.e., "Plaintiff contends at the time of the Arrest the Defendants assumed the worst out of him

given the fact that he is African American and has prior criminal and traffic offenses."  Amend.

Compl. at PageID.192.  While the Court has a duty to read plaintiff's *pro se* amended complaint

indulgently, it does not construe it so broadly as to create an equal protection claim based upon this

sentence.  Similarly, plaintiff made a passing reference to apparent state law violations, stating in ¶

1 of the amended complaint that he was subject to "police brutality; rape assault; discrimination; and

threatening intimidation." *See* Amend. Compl. at PageID.184-185.  The Court does not consider

plaintiff's use of this phrase as sufficient to state multiple causes of action under Michigan law.

With respect to damages, plaintiff's original complaint sought $1,000,000,000 from the City and $100,000,000 from each defendant officer. *See* Compl. (docket no. 1, PageID.3).[2] The amended complaint seeks unspecified damages and injunctive relief against defendants. Amend. Compl. at PageID.184.

## II.      Legal standard

Defendants seek summary judgment on all of plaintiff's claims. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

---

[2] Plaintiff is a serial filer of *pro se* complaints in this Court, having filed eight other cases in this Court in between 2009 and 2014, all of which have been dismissed: *Brown v. Michigan Works*, 1:09-cv-740 (seeking $14,500,000); *Brown v. City of Grand Rapids*, 1:10-cv-586 (seeking $135,000,000); *Brown v. Chinatown Restaurant*, 1:10-cv-730 (seeking $5,000,000); *Brown v. City of Grand Rapids*, 1:10-cv-732 (seeking $550,000); *Brown v. Kent County Recycle Center*, 1:10-cv-733 (seeking $20,000,000); *Brown v. Rau's Party Store*, 1:12-cv-505 (seeking $12,000,000); *Brown v. Grand Rapids Police Department*, 1:12-cv-735 (seeking $550,000,000); and, *Brown v. Chase Bank*, 1:14-cv-807 (seeking $300,000).

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, the Court is not bound to blindly adopt a non-moving party's version of the facts.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

As discussed, defendants' motion is unopposed.  "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion."  *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992).  However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact.  *Id.* at 405.[3]

---

[3] The Court notes that plaintiff's amended complaint included the following statement "The undersigned certifies that the above is true to the best of his knowledge, information, and belief."  Amend. Coomp. (docket no. 39, PageID.193).  While a properly verified complaint has the same force and effect as

5

### III.     Discussion

### A.     Excessive Force

Plaintiff alleged that Officers Dailey and Beracy used excessive force during the

traffic stop and that he was sexually assaulted during the pat down.  The record reflects the following

facts.  At about 10:20 p.m. on December 30, 2011, while monitoring traffic in a high crime area of

Grand Rapids, Officer Dailey heard loud music from a vehicle in violation of a local ordinance.

Dailey Aff. (docket no. 60-1, PageID.260).  While attempting to find the source, Dailey observed

a black Ford Expedition heading northbound on Division Avenue which performed an abrupt U-turn

and headed southbound.  *Id.*  Dailey felt this was unusual driving behavior and followed the vehicle.

*Id.*  He confirmed that the music was coming from the Expedition, saw that the license plate lamp

was not working, and pulled the vehicle over.  *Id.*  As he approached the Expedition, Dailey saw that

the driver (plaintiff) was the only occupant of the vehicle.  Plaintiff's right hand was concealed,

which posed a safety issue because Daily did not know if plaintiff was hiding a weapon.  *Id.*  Plaintiff

willingly showed Dailey his right hand when asked.  *Id.*   However, after Dailey obtained plaintiff's

registration, proof of insurance and driver's license, he noted that plaintiff was acting evasive, e.g.,

avoiding eye contact, looking around, fidgeting, making abrupt movements in the vehicle and

refusing to answer general questions.  *Id.* at PageID.261. Based on his training and experience,

Dailey believed that plaintiff posed a safety concern.  *Id.*  He waited for backup (Officer Beracy) to

arrive.  *Id.*

---

an affidavit for purposes of responding to a motion for summary judgment, *see Lavado v. Keohane*, 992 F.2d
601, 605 (6th Cir. 1993), plaintiff's "certification" does not act as a verification under 28 U.S.C. § 1746(2),
which requires the declarant to state "I declare (or certify, verify, or state) under penalty of perjury that the
foregoing is true and correct."

When Officer Beracy arrived, Officer Dailey told plaintiff to to put down certain paperwork and get out of the vehicle.  *Id.*   Plaintiff did not immediately comply with Dailey's orders, and verbally challenged them.  *Id.*  Eventually, plaintiff started to get out of the vehicle, then put one hand back in the vehicle and started to pull away from Dailey.  *Id.* When plaintiff reached his right hand towards the area of the dash under the steering wheel, both Dailey and Beracy thought he was attempting to reach for a hidden weapon and pulled him out of the vehicle. *Id.*; Beracy Aff. (docket no. 60-2, PageID.265); ICV at 3:15-3:30.  While plaintiff was resisting and the officers were attempting to handcuff him, Beracy told plaintiff "do it now, motherfucker."  ICV at 3:14-3:32.

At his deposition, plaintiff admitted that he was asked to get out of the vehicle multiple times.  Brown Dep. at PageID.278-279.  Plaintiff testified that the officers snatched him out while he was still engaging one of the officers on why he needed to get out, that they twisted his arms and shoulders while handcuffing him, and that they were very aggressive with him.  *Id.*

Dailey stated that his heightened concern for his safety continued to escalate until plaintiff was placed in handcuffs.  Dailey Aff. at PageID.262; ICV at 3:30-3:55.  Dailey initially intended to arrest plaintiff for resisting and obstructing a police officer, and began to search the front pockets of plaintiff's jacket.  Dailey Aff. at PageID.262.  However, after plaintiff was handcuffed the situation de-escalated, Dailey thought an arrest was not warranted, and he transitioned the remainder of the search to a pat down.  *Id.*

Plaintiff's primary claim in this lawsuit is that Dailey used excessive force during the pat down.  Plaintiff testified that he could not see how the pat down was done.  Brown Dep. at PageID. 274-283.  For this reason, plaintiff described it based on his sensation of touch:

Like I said, I don't know if it was before or after the handcuffs, but the other officer had to step back.  And that is when the officer that pulled me over, you know, started patting me down in a sexual way.  And up the crack of my ass or whatever you want to call that.  He hit me in my testicles.  He hit it real hard. He was just real aggressive.

*Id.* at PageID.280.   Plaintiff testified that Officer Dailey started the pat-down in his coat pockets:

Then he probably started patting my body down as far as -- I don't know if he started with my arms or, you know, the side of my body or whatever, you know. And then, I don't know, like I said, one time he got to my lower part of my body.  He patted my legs all the way down to my ankles and stuff.  And, you know, I don't know what order he did it but that is when he searched the crack of my ass and under my testicles.  And he did it real aggressively.  He hit me and then chopped me up the crack of my ass.

*Id.*

When asked to describe the manner of "chopping" up his buttocks, plaintiff described

it "[l]ike a sawing motion and a chopping motion; multiple times. He chopped multiple times and

he did like a sawing motion multiple times." *Id.* at 280-281.  This action was done over plaintiff's

clothing, which he described as jeans. *Id.*  Plaintiff described the search about his testicles:

Q.      Could you describe for me how you -- what it felt like his hands were doing around your testicle area?

A.      Well, when he was chopping the crack of my ass he was -- hit my nuts too a couple times, you know.  Well, all the time because he was going all through there. And then I remember him doing his hands like this when he got up there.  Probably from he went -- You know, he did like this, chopped it, sawed it like -- And he hit them, squeezed them, and searched all around my nuts.  But he squeezed my nuts. And he was hitting me in them too.  I mean, it don't take much -- Any man know it don't take but a thump to hurt it so  . . .

Q.      So, okay.  I want to make sure I'm getting all this.  He hit your nuts a few  - testicles a few times when he was searching your butt area?

A.      Yes. So it was like he was searching my, you know, my ass and my nuts at the same time.  And then -- I don't know.  I'm thinking he went probably just directly to around my nuts but it was from under --  from the front and everything.  So he

didn't just -- When he was doing the chopping and the sawing motion, it was getting the crack of my ass and my nuts, my genital area.  But then he went directly to them as far as like searching them and he squeezed them.  And he kind of -- He hit them too.

Q.      Describe for me the squeezing motion you felt.

A.      Just felt like he was squeezing them.  And he squeezed them real hard. And I asked him was he trying to squeeze something out of them because it hurt.  I mean, like I said, it doesn't take but a little bump or a thump to hurt, you know, that part of your body.  And he was definitely trying to hurt me.

*Id.* at 281.   Plaintiff testified that Officer Dailey hit his testicles "around five" times on the outside of his jeans.  *Id.* at 281-282.  When plaintiff was asked to compare this search with his past history of searches with police, he testified that the search in this case was similar to a previous search of his genital area, with the present case being "a little bit more aggressive."  *Id.* at 281.[4]

While some of plaintiff's pat down was outside of the view of the in-car camera, the in-car video (ICV) (docket no. 64-4) included some video and all of the audio of plaintiff's pat down. During the pat down, is heard to complain in a normal tone of voice:

Plaintiff:      you're hurting my nuts.  Hurting my nut  .  .  .
               [inaudible] you like feeling --

Officer:       stand still, alright?

---

[4] The parties were referring to a previous federal lawsuit in which plaintiff alleged that in July 2009 Grand Rapids Police Officer Ungrey sexually assaulted him during a search, in part by "hitting and squezzing [sic] the plaintiff in his testicles extreamly [sic] hard and violently"and then "chopped up the crack of the plaintiff [sic] ass very hard and violently multiple times." *Tyrosh Brown v. City of Grand Rapids*, No. 1:10-cv-732 (W.D. Mich.) (docket no. 1, PageID.2-3).  Unlike the present case, Officer Ungrey's motion for summary judgment was not supported by an affidavit of other admissible evidence establishing the objective reasonableness of the force he used in connection with the investigatory stop.  *Id.* (Report and Recommendation) (docket no. 27, PageID.120).  However, this Court dismissed that case due to plaintiff's misconduct at trial.  *Id.* (Order of Dismissal) (docket no. 54) ("For reasons stated on the record this date, Plaintiff in pro se, refused to follow preliminary instructions of this Court, arguing repeatedly with the Court; thereby making it impossible to frame the issue relating to July 17, 2009 and proceed to the anticipated jury selection and trial.").

    Plaintiff:      . . .  feeling all up in my ass and my nuts like that.

ICV (6:28-6:40) (docket no. 60-4).  To the extent plaintiff is visible, he appears to be standing and in no distress.

        Claims that officers used excessive force in connection with an arrest or investigative stop are analyzed under the Fourth Amendment's "objective reasonableness" standard.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Plaintiff's amended complaint alleged a seizure triggering the Fourth Amendment's protections, i.e., an officer's exercise of force or show of authority that "in some way restrained the liberty of a citizen."  *Id.* at 395 n.10.  *See Terry v. Ohio*, 392 U.S. 1, 16 (1968) ("[w]hen a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person").

        The reasonableness of the force used by the officer is judged by the totality of the circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat, and whether the suspect was actively resisting or attempting to evade arrest.  *See Slusher v. Carson*, 540 F.3d 449, 455 (6th Cir. 2008).  Here, the crime was not severe, i.e., Dailey stopped a vehicle that was playing loud music contrary to a local ordinance and had a defective license plate lamp.  However, this minor incident escalated when Officers Dailey and Beracy believed that plaintiff posed an immediate threat due to: his refusal to answer questions; his refusal to follow orders; his refusal to leave the vehicle when ordered; his abrupt movements inside the vehicle; his attempt to get back into the vehicle; and his physical resistance.  Based on the evidence before the Court, including the affidavits, plaintiff's deposition testimony, and the ICV of the incident, the force used against plaintiff, which consisted of removing plaintiff from the vehicle and handcuffing him, was reasonable.

The primary focus of plaintiff's complaint is the alleged excessive force used during the pat down which plaintiff characterized as a sexual assault. A police officer's "stop and frisk" is by definition thorough. "(T)he officer must feel with sensitive fingers every portion of the prisoner's body. A thorough search must be made of the prisoner's arms and armpits, waistline and back, the groin and area about the testicles, and entire surface of the legs down to the feet." *Terry*, 392 U.S. at 17, n. 13 (internal quotation marks omitted). A pat down frisk is not a search "outside of *Terry*'s boundaries" where the officer "did not reach up or grope beneath [the subject's] outside clothing; he made no attempt to place his hands under [the subject's] waistband; and he did not reach within [the subject's] inner clothing or pockets." *United States v. Stennis*, 457 Fed. Appx. 494, 502 (6th Cir. 2012). Finally, the allegation that an officer "grabbed [the subject's] privates and squeezed them really hard" is insufficient to state a constitutional claim. *See Tuttle v. Carroll County Detention Center*, 500 Fed. Appx. 480 (6th Cir. 2012) (in the context of an Eighth Amendment claim involving the pat down of parolee). Viewing the evidence in the light most favorable to plaintiff, defendants' actions did not violate plaintiff's Fourth Amendment rights. Accordingly, defendants Dailey and Beracy are entitled to summary judgment on plaintiff's Fourth Amendment claim.

> **B.      Failure to give *Miranda* rights**

Plaintiff also alleged that Officers Dailey and Beracy violated the Fifth and Sixth Amendments because they did not read plaintiff his *Miranda* rights. Defendants' failure to give plaintiff *Miranda* warnings during the traffic stop does not state a cause of action under § 1983. Even if plaintiff had been in custody at the time, the failure to give *Miranda* warnings does not violate the constitution or give rise to a claim under § 1983. As one court recently explained:

> The Constitution and laws of the United States do not guarantee Plaintiff the right to *Miranda* warnings.   They only guarantee him the right to be free from self-incrimination.  *Miranda* warnings are a procedural safeguard rather than a right explicitly stated in the Fifth Amendment.  The remedy for a *Miranda* violation is the exclusion from evidence of any ensuing self-incriminating statements.  *See Chavez v. Martinez*, 538 U.S. 760, 772, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003) (observing that the failure to comply with *Miranda* does not, in and of itself, give rise to a constitutional claim, and the Fifth Amendment's protections may only be invoked to exclude at trial evidence taken during the interview).  The remedy does not subject a police officer to civil liability.  *McKinley v. City of Mansfield*, 404 F.3d 418, 432 n. 13 (6th Cir.2005) (recognizing that a civil claim for damages based upon an officer's failure to read a suspect his or her *Miranda* warnings is "squarely foreclosed" by the decision in *Chavez*).

*Meyers v. City of Chardon*, No. 1:14 CV 2340,  2015 WL 1648992 at *11 (N.D. Ohio April 13, 2015).  Accordingly, the individual defendants are entitled to summary judgment on plaintiff's § 1983 claim arising from an alleged *Miranda* violation.

### C.    Claims against the City

The City's liability under § 1983 must be based on more than *respondeat superior*, or the right to control employees.  *See Monell v. Department of Social Services*, 436 U.S. 658, 691, 694-95 (1978).  "Rather, a municipality may be held liable under § 1983 only where its policy or custom causes the constitutional violation in question."  *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005).  Thus,  "a plaintiff who sues a city and its police department for constitutional violations under 42 U.S.C. § 1983 must establish that a governmental policy or custom caused the alleged injury."  *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998).  When municipal employees, such as police officers, inflict damage, the city can be held liable for failing to train its employees adequately.  *Sova*, 142 F.3d at 904.  However, a plaintiff can establish municipal liability "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants."  *Canton v. Harris*, 489 U.S. 378, 389 (1988).

"In other words, a municipality can be liable under § 1983 only where its policies are 'the moving force' behind the constitutional violation." *Sova*, 142 F.3d 898 at 904, citing *Monell*, 436 U.S. at 694.

Here, it is unnecessary to address the City's policies or customs regarding the supervision or training of its police officers. Because neither Officer Beracy nor Officer Dailey violated plaintiff's constitutional rights, there is no basis to hold the City liable under *Monell*. *See Meals v. City of Memphis, Tenn.*, 493 F.3d 720, 731 (6th Cir. 2007) (there was no basis on which to hold the city responsible under *Monell* when its police officer did not violate the constitutional rights of victims killed and injured in a high speed pursuit). *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (municipality has no liability if the plaintiff suffered no constitutional injury at the hands of the municipality's police officer); *Epps v. Lauderdale County, Tennessee*, 45 Fed. Appx. 332, 334 (6th Cir. 2002) (where the individual liability claims of municipality employees were without merit, "no underlying constitutional violation existed for which the municipality could be held responsible"). Accordingly, the City is entitled to summary judgment on all of plaintiff's claims.

### IV.      Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 59) be **GRANTED** and that this action be **TERMINATED**.

Dated: June 13, 2016                              /s/ Ray Kent                                    
                                                           RAY KENT
                                                           United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).